IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| Recursion Software, Inc., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 4:10-cv-403 |
| Double-Take Software, Inc., | § | |
| f/k/a NSI Software, Inc. and | § | Jury |
| Network Specialists, Inc. | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF RECURSION SOFTWARE, INC.'S**
**ORIGINAL COMPLAINT AND JURY DEMAND**

Plaintiff Recursion Software, Inc. files this Original Complaint against Defendant

Double-Take Software, Inc., f/k/a NSI Software Inc. and Network Specialists, Inc., as follows:

**I.**

**INTRODUCTION**

1.      Plaintiff Recursion Software, Inc. ("Recursion") brings this action to enforce

certain copyrights and contractual interests that it obtained as the successor in interest to

ObjectSpace, Inc. ("ObjectSpace").  Defendant Double-Take Software, Inc., f/k/a NSI Software,

Inc. and Network Specialists, Inc. ("Double-Take") has infringed Recursion's copyrights and

breached its contractual obligations to Recursion.  Double-Take's unlawful actions have caused

Recursion millions of dollars in damage.

**II.**

**PARTIES**

2.      Plaintiff Recursion is a corporation duly organized and existing under the laws of

the State of Texas with its principal office at 2591 North Dallas Parkway, Suite 200, Frisco, Texas 75034.  For all purposes in this lawsuit, Recursion is the successor-in-interest to ObjectSpace, Inc.

3.      On information and belief, Defendant Double-Take is a corporation duly organized and existing under the laws of the State of Delaware with its principal office at 257 Turnpike Road, Southborough, Massachusetts 01772.  Double-Take may be served through its registered agent, CT Corporation System, at its principal office of 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

## III.

## JURISDICTION AND VENUE

4.      Count One of this action arises out of the Copyright Laws of the United States. Accordingly, this Court has subject matter jurisdiction over Count One under 28 U.S.C. §§ 1331 and 1338(a).  Count Two is a separate and independent cause of action but is between the same parties and is based upon the same nucleus of operative facts as Count One.  As such, this Court has pendent or supplemental jurisdiction over the claim in Count Two pursuant to 28 U.S.C. § 1367(a).

5.      On information and belief, Double-Take does business in Texas and in this District, and therefore has continuous and systematic contacts with Texas and this District sufficient for this Court to establish personal jurisdiction over Double-Take.

6.      Based on Double-Take's continuous and systematic contacts with Texas and this District, Double-Take is deemed to reside in this District under 28 U.S.C. § 1391(c).  Venue is, therefore, proper in this Court under 28 U.S.C. § 1400(a).  Additionally, a substantial part of the events or omissions giving rise to the claims alleged in this Complaint occurred in this District,

because this suit concerns Double-Take's breach of a contract entered into with Recursion while

Recursion resided in this District.  Accordingly, venue is also proper under 28 U.S.C. § 1391(b).

## IV.

## FACTUAL BACKGROUND

### *Background of Recursion*

7.       Recursion is the successor-in-interest to ObjectSpace, Inc. for all purposes in this

lawsuit.  Recursion has assumed the intellectual property rights and licensing and contractual

rights to certain software formerly owned by ObjectSpace known as the C++ Toolkits.  The C++

Toolkits include a number of toolkits that assist software developers in developing new software

programs.

8.       The  C++  Toolkits  are  protected  through  federally  registered  copyrights.   C++

Toolkit Version 2.0 is protected through Copyright Registration No. TX 7-183-058.  C++

Toolkit Version 2.1 is protected through Copyright Registration No. TX 7-183-056.  True and

correct copies of these federal copyright registrations are attached hereto as Exhibits A and B.

C++  Toolkit  Version  2.0  and  C++  Toolkit  Version  2.1  are  collectively  referred  to  as  the

"Copyrighted Software."

9.       Recursion  is  the  sole  owner  of  all  rights,  title,  and  interest  in  the  Copyrighted

Software.  Recursion is also the assignee and successor to all of ObjectSpace's contractual rights

and claims as to Double-Take.

### *The License Agreements between Recursion and Double-Take*

10.      In  late  1996,  Double-Take  purchased  from  ObjectSpace  a  non-exclusive,  non-

transferable license to version 2.0 of the Copyrighted Software.  Although Double-Take initially

ordered version 1.1 of the Copyrighted Software, Double-Take received an upgrade to version

2.0 of the Copyrighted Software.  Specifically, on or about November 26, 1996, Double-Take ordered one copy of Systems<ToolKit> Support Windows NT/95 Watcom 10.5 1.1 and one copy of Systems<ToolKit> Windows NT/95 Watcom 10.5 1.1.  One week later, on or about December 6, 1996, ObjectSpace delivered to Double-Take one copy of Systems<ToolKit> V1 Upgrade Windows NT/95 2.0 and one copy of Systems<ToolKit> V1 Upgrade SPARC Solaris 2.x 2.0.

11.   ObjectSpace required its licensees using version 2.0 of the Copyrighted Software to accept the terms of a Software License and Warranty Agreement before using the Copyrighted Software.

12.   Despite Recursion's requests, Double-Take refuses to provide Recursion with sufficient information for Recursion to determine precisely which agreement governs Double-Take's use of version 2.0 of the Copyrighted Software.  However, Recursion has determined based on the version of the Copyrighted Software, the time period at issue, and other relevant facts that Double-Take would have been required to accept the terms of either the 1996 Software License and Warranty Agreement (the "1996 License Agreement") or the 1996, 1997, 1998 Software License and Warranty Agreement (the "1996-1998 License Agreement").  True and correct copies of the 1996 License Agreement and the 1996-1998 License Agreement are attached hereto as Exhibit C and Exhibit D, respectively.

13.   The terms of the 1996 License Agreement and the 1996-1998 License Agreement are similar in all material respects.  The 1996 License Agreement and the 1996-1998 License Agreement are both referred to hereinafter as the "Version 2.0 License Agreement."

14.   On information and belief, Double-Take accepted the terms of the Version 2.0 License Agreement.

15.     The Version 2.0 License Agreement provides that, "Licensee is only permitted to distribute the software in the Product in the form of a ***shared library or dynamic link library*** solely to be used with Licensee's compiled executables for the purposes of dynamic loading." (Emphasis added).

16.     The terms "shared library" and "dynamic link library" are terms of art referring to how a software developer builds a software "library" using C++.  The library can be either shared or dynamically linked, as permitted by the Version 2.0 License Agreement, or it can be statically linked.  By definition, statically linked libraries cannot be shared or dynamically linked and are, therefore, not permitted by the Version 2.0 License Agreement.

17.     On or about April 28, 2000, Double-Take purchased from ObjectSpace a non-exclusive, non-transferable license to use version 2.1 of the Copyrighted Software.  Specifically, Double-Take purchased a license to one copy of Systems Toolkit Upgrade Solaris 2.x 2.1 and one copy of Systems Toolkit Support Solaris 2.x 2.1.

18.     As with version 2.0, ObjectSpace required its licensees using version 2.1 of the Copyrighted Software to accept the terms of a Software License and Warranty Agreement before using the Copyrighted Software ("Version 2.1 License Agreement").  A true and correct copy of the Version 2.1 License Agreement is attached hereto as Exhibit E.

19.     On information and belief, Double-Take also accepted the terms of the Version 2.1 License Agreement.

20.     Unlike the Version 2.0 License Agreement, the Version 2.1 License Agreement does not grant Double-Take the right to distribute the Copyrighted Software in any form, whether shared or dynamically linked or statically linked.

21.     Section 5 of the Version 2.1 License Agreement states, "Licensee further agrees

to take all reasonable steps to ensure that no unauthorized persons shall have access to any of the [Copyrighted Software] ….”

22.      Additionally, section 2.2 of the Version 2.1 License Agreement states that the licensee shall not “transfer the [Copyrighted Software] to a different operating system, network or Site ….”

23.      Double-Take has only purchased licenses to use versions 2.0 and 2.1 of the Copyrighted Software.  Therefore, either the Version 2.0 License Agreement or the Version 2.1 License Agreement governs Double-Take’s current use of the Copyrighted Software.

## *Double-Take’s Breaches of the License Agreements*

24.      Double-Take has admitted that it distributes the Copyrighted Software as a statically linked library.  On or about May 3, 2010, Rob Beeler (“Beeler”), a Double-Take employee, spoke with Mike Eddings (“Eddings”), a Recursion employee, by telephone regarding Double-Take’s use of the Copyrighted Software.  Beeler informed Eddings that Double-Take uses the Copyrighted Software in most of its products and that it is statically linked.  Beeler told Eddings that his lawyers informed him he needed a new license that allows for static linking.

25.      Through subsequent email exchanges and telephone calls, Beeler informed Eddings that:  (1) Double-Take links the Copyrighted Software libraries into an executable that is shipped with its products; (2) the library file names end in .lib; and (3) Double-Take uses the variable OS_STATIC_LIB in building its libraries.  Based on these facts, Recursion confirmed that Double-Take is statically linking the Copyrighted Software in its products.

26.      On information and belief, Double-Take has distributed the Copyrighted Software in its products as a statically linked library since it originally purchased the Copyrighted Software in 1996.

27.     Double-Take's distribution of the Copyrighted Software as a statically linked library violates both the Version 2.0 License Agreement and the Version 2.1 License Agreement.

28.     When an end user has access to header file information and a static library, the end user has access to the functionality of the library outside of the application with which it was provided.  Accordingly, by distributing the Copyrighted Software as a statically linked library, Double-Take potentially provided end users with access to the functionality of the Copyrighted Software without the end users having to purchase the Copyrighted Software.  In doing so, Double-Take failed to take reasonable steps to ensure that no unauthorized persons would have access to the Copyrighted Software, in violation of the Version 2.1 License Agreement.

29.     Double-Take has also used the Copyrighted Software on numerous operating systems or platforms for which it was not licensed.  Double-Take's use of the Copyrighted Software on unauthorized operating systems violates the Version 2.1 License Agreement.

### *Double-Take's Conduct Harmed Recursion*

30.     On information and belief, Recursion has suffered millions of dollars in damages from Double-Take's unlawful use of the Copyrighted Software.

31.     On information and belief, if Double-Take had contracted for the right to distribute the Copyrighted Software as a static library when Double-Take first purchased its licenses to version 2.0 and version 2.1 of the Copyrighted Software, Double-Take would have been required to pay an initial fee of at least $100,000.  Double-Take also would have been required to pay a fixed annual active maintenance fee.  This fee likely would have been an annual payment of 18% of the initial fee, or $18,000 per year for each year at issue.  Additionally, Double-Take would have been required to pay a royalty fee based on product revenue or units sold.  On information and belief, Double-Take earned more than $83 million in

total revenue in 2009. Applying a 5% industry standard royalty rate to this figure, Double-Take would have been required to pay Recursion *more than $4.15 million in royalty fees during 2009 alone*. Assuming Double-Take's revenues were comparable during the preceding years, this number would be multiplied for each year Double-Take distributed the Copyrighted Software as a static library.

32. On information and belief, if Double-Take had also contracted for the right to utilize version 2.1 of the Copyrighted Software on multiple platforms or operating systems when it first purchased version 2.1 of the Copyrighted Software, Double-Take would have been required to pay an additional initialization fee and an increased annual active maintenance fee on top of what it would have paid for the right to distribute the Copyrighted Software as a statically linked library.

## V.

## CAUSES OF ACTION

### *Count One: Copyright Infringement*

33. Recursion re-alleges and incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

34. Recursion is the owner of the Copyrighted Software, which has been federally registered and is entitled to the protection of federal copyright law.

35. Double-Take has systematically distributed the Copyrighted Software in its products as a statically linked library and used the Copyrighted Software on unauthorized operating systems without Recursion's authority or consent. As such, Double-Take has violated Recursion's exclusive rights in the Copyrighted Software in violation of the Copyright Laws of the United States, 17 U.S.C. § 101, *et. seq.*

36.     On information and belief, Double-Take has acted willfully, intentionally, purposefully, and in disregard of and with indifference to Recursion's rights.

37.     As a direct and proximate result of Double-Take's infringement of Recursion's copyright and exclusive rights, Recursion is entitled to its actual damages, estimated and discussed above in paragraphs 31 and 32, as well as to Double-Take's profits for each act of infringement, pursuant to 17 U.S.C. § 504(b), in an amount within the jurisdictional limits of this Court.

## *Count Two:  Breach of Contract*

38.     Recursion re-alleges and incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

39.     The Version 2.0 License Agreement and the Version 2.1 License Agreement entered into between Recursion and Double-Take are valid, enforceable agreements.

40.     Recursion performed each of its contractual obligations under the Version 2.0 License Agreement and the Version 2.1 License Agreement.

41.     Double-Take breached the Version 2.0 License Agreement and the Version 2.1 License Agreement by distributing the Copyrighted Software in its products as a statically linked library.

42.     Double-Take further breached the Version 2.1 License Agreement by:  (1) failing to take reasonable steps to ensure that no unauthorized person gained access to the Copyrighted Software; and (2) transferring the Copyrighted Software to a different operating system than was authorized.

43.     As a direct and proximate result of Double-Take's breaches of its contractual obligations, Recursion has been damaged in an amount that is within the jurisdictional limits of

this Court.

44.     Recursion is also entitled to its attorneys' fees and costs pursuant to Chapter 38.001 *et. seq.* of the Texas Civil Practice and Remedies Code.

## VI.

## CONDITIONS PRECEDENT

Pursuant to Federal Rule of Civil Procedure 9(c), all conditions precedent to Recursion's right to recover have occurred or have been performed, including demand and presentment.

## VII.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues alleged in this Complaint.

## VIII.

## PRAYER

WHEREFORE, Plaintiff Recursion Software, Inc. prays for the following relief:

1.     Defendant Double-Take Software, Inc. be ordered to account for and to pay to Recursion all profits derived by reason of Defendant's acts alleged in this Complaint;

2.     Defendant Double-Take Software, Inc. be ordered to pay to Recursion all actual damages sustained by Recursion, including, without limitation, the loss of license or royalty fees that it would have made but for Defendant's acts;

3.     A constructive trust be placed upon Defendant Double-Take Software, Inc.'s profits gained through the unauthorized use of Recursion's Copyrighted Software;

4.     Recursion be awarded its costs of suit, including reasonable and necessary attorneys' fees and expenses for prosecution and appeal, if any, of this matter;

5.     Recursion be awarded prejudgment and postjudgment interest at the highest legal

rate on all sums awarded in the Court's judgment; and

     6.     Recursion be awarded such other and further relief, at law or in equity, to which it

may be justly entitled.

Respectfully submitted,

/s/ David H. Harper
David H. Harper
Lead Attorney
State Bar No. 09025540
Michelle C. Jacobs
State Bar No. 24069984

HAYNES AND BOONE, LLP
One Victory Park
2323 Victory Avenue
Dallas, Texas 75229
Telephone: [214] 651.5000
Facsimile: [214] 651.5940
*david.harper@haynesboone.com*
*michelle.jacobs@haynesboone.com*

ATTORNEYS FOR PLAINTIFF
RECURSION SOFTWARE, INC.