**DEVELOPER LICENSE AGREEMENT**

**THIS LICENSE AGREEMENT** (this "Agreement") is made effective as of the date of installation of the Product (as defined below) between (i) OBJECTSPACE, a Delaware corporation ("LICENSOR") and LICENSEE.

1. **DEFINITIONS**. 1.1 **Documentation.** The term "Documentation" means all user manuals and other written materials provided by LICENSOR to LICENSEE describing the installation, operation and maintenance of the Products. 1.2 **Enhancements.** The term "Enhancements" means modifications or additions to, or derivative works or applications for or from, the Products. 1.3 **Product(s).** The term "Product(s)" means authorized copies of the following computer software programs (in object code only) and related Documentation: ObjectSpace C++ Components Series™ Version 2.1

2. **Grant OF License**. **TERMS**: 2.1 **Grant**. LICENSOR hereby grants to LICENSEE a perpetual, non-exclusive, non-transferable, non-assignable right to use the Product and for the purpose of developing applications, add-ons, derivative works, and improved versions of the Product, but not for resale or re-license. LICENSOR is granted no rights of any kind in Enhancements to the Product. 2.2 **Restrictions**. LICENSEE shall not: (i) transfer the Product to a different operating system, network, or Site without the prior written consent of LICENSOR and payment of any additional fees which may be due; (ii) reproduce or modify the Product except as allowed herein; (iii) cause or allow discovery of source code in any way; (iv) decompile, reverse engineer, disassemble or otherwise attempt to derive source code from the Licensed Product; or (v) rent or lease the Product or any derivatives. 2.3 **Title.** Title to and ownership of all proprietary rights in the Product, and in any Product development made by LICENSEE, will at all times remain the property of LICENSOR. LICENSOR retains all right, title and interest in the Licensed Product and in all improvements, enhancements, modifications and derivative works of the Licensed Product including all rights to patent, copyright, trade secret and trademark. 2.4 **Proprietary Notices.** LICENSEE agrees to reproduce the copyright, trademark and other proprietary notices contained on or in the Product as delivered to LICENSEE on all copies of such Product and not to remove such notices. 2.5 **Protection and Security.** LICENSEE agrees to use its best, commercially reasonable efforts to secure and protect the Product and prevent any breach, compromise or violation of LICENSOR's rights and title to the Product, by LICENSEE's employees, consultants, independent contractors, or any other party accessing Product. In no event will the LICENSEE's standard of care be less than LICENSEE uses to protect its own confidential information. LICENSOR will secure and protect any LICENSEE confidential information it possesses in the same manner. 2.6 **Delivery.** LICENSOR will provide LICENSEE with one (1) copy of the Product either on CD (or alternative media) or by downloading from LICENSOR'S Web site. The terms and conditions of this Agreement shall be the same regardless of the method of delivery. 2.7 **Verification.** Upon thirty (30) days prior written notice, LICENSOR may inspect LICENSEE's records related to LICENSEE's license for the Product to ensure that LICENSEE complies with the terms of this Agreement. Such verification will be conducted during LICENSEE's regular business hours, will comply with LICENSEE's normal security procedures, and will not unreasonably interfere with LICENSEE's business operations.

3. **PRODUCT WARRANTY**. 3.1 LICENSOR warrants to LICENSEE that, at the date of delivery of the Products to LICENSEE and for a period ending 90 days following the date of delivery of the Products to LICENSEE (i) the media on which each Product is recorded and related Documentation shall be free from defects in workmanship and materials under normal use, and (ii) the Products shall perform substantially in accordance with the published specifications and Documentation. If notified in writing by LICENSEE, LICENSOR may, at its option, correct significant program errors in the Products within a reasonable time period. THE FOREGOING PRODUCT WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, WHETHER IMPOSED BY CONTRACT, STATUTE, COURSE OF DEALING, CUSTOM OR USAGE OR OTHERWISE. 3.2

**EXHIBIT E**

Except as set forth above, in no event shall LICENSOR be liable to LICENSEE, in excess of the price paid to LICENSOR by LICENSEE for the Products hereunder, for any breach of warranty or any claim, loss or damage arising from or relating to the installation, use or performance of the Products (including, without limitation, any indirect, special, incidental or consequential damages).  3.3 LICENSOR reserves the right at any time to make changes to the Products.  3.4 **IN NO EVENT SHALL LICENSOR BE LIABLE (WHETHER IN TORT, NEGLIGENCE, CONTRACT, WARRANTY, PRODUCT LIABILITY OR OTHERWISE) FOR ANY INDIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES OR LOSS OF PROFITS OR SAVINGS ARISING OUT OF ITS PERFORMANCE OR NONPERFORMANCE OF TERMS OF THIS AGREEMENT OR THE USE, INABILITY TO USE OR RESULTS OF USE OF THE PRODUCTS EVEN IF LICENSOR HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.**

**4. COPYRIGHT and PATENT INDEMNIFICATION**.  4.1 LICENSOR agrees to indemnify and hold LICENSEE harmless from any final award of costs and damages against LICENSEE for any action based on infringement of any U.S. copyright or patent as a result of the use of the Products:  (i) under the terms and conditions specified herein; (ii) under normal use; and (iii) not in combination with other items; provided that LICENSOR is promptly notified in writing of any such suit or claim against LICENSEE and further provided that LICENSEE permits LICENSOR to defend, compromise or settle the same and gives LICENSOR all available information, reasonable assistance and authority to enable LICENSOR to do so.  The foregoing states the entire liability of LICENSOR with respect to infringements of any copyrights or patents by the Products or any part thereof.

**5.  TRADE SECRETS AND PROPRIETARY INFORMATION**.  5.1 LICENSEE acknowledges that LICENSOR is the owner of the Products, that the Products are confidential in nature and not in the public domain, that LICENSOR claims all intellectual and industrial property rights granted by law therein and that, except as set forth herein, LICENSOR does not hereby grant any rights or ownership of the Products to LICENSEE or any third party.  Except as set forth herein, LICENSEE agrees not to copy or otherwise reproduce any Product, in whole or in part, without LICENSOR's prior written consent.  LICENSEE further agrees not to reverse engineer, disassemble or decompile any Products in whole or in part or otherwise attempt to reproduce the source code thereof or its equivalent.  LICENSEE further agrees to take all reasonable steps to ensure that no unauthorized persons shall have access to any of the Products and that all authorized persons having access to the Products shall refrain from any such disclosure, duplication or reproduction except to the extent reasonably required in the performance of LICENSEE's duties under this Agreement.   5.2 LICENSEE agrees to accord the Products and the Documentation and all other confidential information relating to this Agreement the same degree and methods of protection as LICENSEE undertakes with respect to its confidential information, trade secrets and other proprietary data.  5.3 LICENSEE agrees not to challenge, directly or indirectly, the right, title and interest of LICENSOR in and to the Products, nor the validity or enforceability of LICENSOR's rights under applicable law.  LICENSEE agrees not to directly or indirectly, register, apply for registration or attempt to acquire any legal protection for any of the Products or any proprietary rights therein or to take any other action which may adversely affect LICENSOR's right, title or interest in or to the Products in any jurisdiction.  5.4 LICENSEE acknowledges that, in the event of a breach by LICENSEE of its obligations under this Article 8, LICENSOR may immediately terminate this Agreement, without liability to LICENSEE and may bring an appropriate legal action to enjoin any such breach hereof, and shall be entitled to recover from LICENSEE reasonable legal fees and costs in addition to other appropriate relief.  5.5 Licensee agrees to notify Licensor immediately and in writing of all circumstances surrounding the unauthorized possession or use of the Products and Documentation by any person or entity.  Licensee agrees to cooperate fully with Licensor in any litigation relating to or arising from such unauthorized possession or use.

**6. TRADEMARKS**. 6.1 LICENSEE hereby acknowledges LICENSOR's ownership of the trademarks C++ Component Series, Standards<ToolKit>, Foundations<ToolKit>, Communications<ToolKit>, Web<ToolKit>, and ObjectSpace, each of the Product names and all related trademarks and service marks.  LICENSEE further acknowledges that it shall acquire no interest therein by virtue of this Agreement or the performance by LICENSEE of its duties and obligations hereunder.  LICENSEE agrees not to use the name "ObjectSpace" or any of the Product names or marks (or any confusingly similar name or symbol), in whole or in part, as part of LICENSEE's business or trade name.  6.2 LICENSOR hereby grants to LICENSEE the non-exclusive, limited right to use the proprietary Product names and marks only in connection with the license granted hereunder.  LICENSOR makes no warranty, express or implied, to LICENSEE concerning the use or validity of such names and marks.

**7. TERMINATION**.  7.1 LICENSOR may terminate this Agreement at any time after the occurrence of any of the following events: a) LICENSEE is declared or acknowledges that it is insolvent or otherwise unable to pay its debts as they become due or upon the filing of any proceeding (whether voluntary or involuntary) for bankruptcy, insolvency or relief from creditors of LICENSEE;  b) LICENSEE enters into any agreement relating to its acquisition by an unaffiliated third party or a majority of the equity interest of LICENSEE is sold or otherwise transferred to an unaffiliated third party within any twelve (12)-month period; c) LICENSEE assigns or transfers this Agreement or any of its rights to obligations hereunder, without LICENSOR's prior written consent; or d) LICENSEE violates any material provision of this Agreement, including without limitation, the payment obligations set forth in Article 2.3 hereof.  7.2 LICENSEE may terminate this Agreement at any time after the occurrence of any of the following events: a) LICENSOR is declared or acknowledges that it is insolvent or otherwise unable to pay its debts as they become due or upon the filing of any proceeding (whether voluntary or involuntary) for bankruptcy, insolvency or relief from creditors or LICENSOR; or b) LICENSOR violates any material provision of this Agreement.  7.3 The term of the license granted under this Agreement is perpetual, except that a party may terminate such license for material breach of this Agreement after giving the other party written notice of such breach and fifteen (15) days to cure such breach.  If Licensee fails to cure such breach, all rights to use the Products will terminate on the termination date specified in such notice.  7.4 Upon the termination of this Agreement for any reason, LICENSEE will discontinue all use of the Products and, within ten (10) days after termination, will return to LICENSOR all original copies of the Products supplied to LICENSEE and will destroy or delete all copies of the Products then in its possession, including but not limited to, any back-up or archival copies of the Products and Documentation.  At LICENSOR's request, LICENSEE will verify in writing to LICENSOR that such actions have been taken. 7.5 No termination of this Agreement for any reason whatsoever shall in any way affect the continuing obligations of the parties under Articles 5.6, and 8 hereof.

8. **GENERAL PROVISIONS**. 8.1 **Export Control.**  LICENSEE agrees that it will not export or reexport the Product, without the appropriate U.S.  Governmental licenses. 8.2 **Government End Users.**  RESTRICTED RIGHTS:  If the Product is acquired under the terms of a proposal or agreement with the United States Government or any contractor therefor, the Product is subject to the following: (a) For acquisition by or on behalf of civilian agencies, as necessary to obtain protection as "commercial computer Product" and related documentation in accordance with the terms of this Commercial Product Agreement as specified in 48 C.F.R. 12.212 of the Federal Acquisition Regulations and its successors; (b) For acquisition by or on behalf of units of the Department of Defense ("DoD") as necessary to obtain protection as "commercial computer Product" and related documentation in accordance with the terms of this commercial computer Product license as specified in 48 C.F.R. 227-7202-2 of the DoD F.A.R. Supplement and its successors.  8.3 **Year 2000 Compliance.**  LICENSOR warrants that the change in the calendar year from December 31, 1999 to January 1, 2000 shall not affect the existing functionality or interoperability of the Product delivered to LICENSEE; provided, however that (i) this Agreement remains in effect; (ii) LICENSEE has continuously updated the Product to the most recent version;

(iii) LICENSEE has provided LICENSOR all reasonably available information, and assistance, at LICENSOR's expense, to address year 2000 issues related to the Product; (iv) LICENSEE has not modified the Product, and (v) the information in LICENSEE's existing databases includes adequate indicators of century. LICENSOR disclaims any warranty relating to the quality of any such imported, accessed, or manipulated data. LICENSEE's sole and exclusive remedy shall be for LICENSOR to modify or replace the Product or, if LICENSOR is unable to provide a reasonable solution, LICENSOR will accept the return of the Product and LICENSOR will refund the licensee fees paid by LICENSEE for such Product.  The foregoing is LICENSEE's sole and exclusive remedy for Year 2000 errors.  8.4 This Agreement does not create any relationship of association, partnership, joint venture or agency between the parties.  8.5 This Agreement sets forth the entire agreement and understandings between the parties hereto with respect to the subject matter hereof.  This Agreement merges all previous discussions and negotiations between the parties and supersedes and replaces any and every other agreement, which may have existed between LICENSOR and LICENSEE with respect to the contents hereof.  8.6 Except to the extent and in the manner specified in this Agreement, any modification or amendment of any provision of this Agreement must be in writing and bear the signature of the duly authorized representative of each party.  8.7 The failure of either party to exercise any right granted herein, or to require the performance by the other party hereto of any provision if this Agreement, or the waiver by either party of any breach of this Agreement, shall not prevent a subsequent exercise or enforcement of such provisions or be deemed a waiver of any subsequent breach of the same or any other provision of this Agreement.  8.8 LICENSEE shall not sell, assign or transfer any of its rights, duties or obligations hereunder without the prior written consent of LICENSOR. LICENSOR reserves the right to assign or transfer this Agreement or any of its rights, duties and obligations hereunder, to any direct or indirect subsidiary or affiliate of LICENSOR.  8.9 All notices, requests, reports, submissions and other communications permitted or required to be given under this Agreement shall be deemed to have been duly given if such notice or communication shall be in writing and sent by personal delivery or by airmail, cable, telegram, telex, facsimile transmission or other commercial means of rapid delivery, postage or costs of transmission and delivery prepaid, to the parties identified in the Purchase Order until such time as either party hereto shall give the other party hereto not less than ten (10) days' prior written notice of a change of address in accordance with the provisions hereof.  8.10 The validity of this Agreement and the rights, obligations and relations of the parties hereunder shall be construed and determined under and in accordance with the substantive laws of the State of Texas without regard to its rules of conflicts of law.  8.11 If any provision of this Agreement is determined by a court of competent jurisdiction to be in violation of any applicable law or otherwise invalid or unenforceable, such provision shall to such extent as it shall be determined to be illegal, invalid or unenforceable under such law be deemed null and void, but this Agreement shall otherwise remain in full force and effect.  8.12 LICENSEE shall not publicize or disclose to any third party by other means any of the terms or provisions of this Agreement, or the discussions relating thereto, without the prior written consent of a duly authorized officer of LICENSOR, except as required by law. 8.13 The Parties expressly agree that by receiving and using a LICENSOR-supplied installation key, LICENSEE is deemed to have read, understood, and accepted all the terms of this Agreement.